# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| DEBRA NELSON, § | |
| § | |
| *Plaintiff,* § | Civil Action No. 4:19-CV-00263 |
| § | Judge Mazzant |
| v. § | |
| § | |
| SUNBEAM PRODUCTS, INC., d/b/a § | |
| JARDEN CONSUMER SOLUTIONS, § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Sunbeam Products, Inc.'s Motion for Summary Judgment (Dkt. #23). Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted in part and denied in part.

### BACKGROUND

This lawsuit arises from an injury Debra Nelson ("Nelson") received when shew fell asleep on a space heater that Defendant Sunbeam Products, Inc., d/b/a Jarden Consumer Solutions ("Sunbeam") manufactured. Nelson purchased a Sunbeam Space Heater Model No. SQH310 ("Sunbeam Heater") from a Walmart store in Paris, Texas. On or about January 30, 2018, Nelson was asleep in her mobile home with the Sunbeam Heater powered on and heating her sleeping area. Nelson stood up at some point in the morning and fell over onto the Sunbeam Heater. The heater had tipped over at some point during the night but did not automatically turn off. Nelson was immobilized for some period of time as her flesh maintained contact with the grill of the heater. The extended contact with the hot surface caused third degree burns to Nelson's body.

Nelson brought suit on April 10, 2019, bringing claims for strict liability, breach of warranty, and negligence. On March 5, 2021, Sunbeam filed this Motion for Summary Judgment (Dkt. #23) asking the Court to grant summary judgment on Nelson's product liability—design defect claim and her negligence claim.[1] On March 26, 2021, Nelson filed her Response (Dkt. #27), and on April 2, 2021, Sunbeam filed its Reply (Dkt. #28).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or

---

[1] The Court notes that Sunbeam also asked for summary judgment on Nelson's claims for manufacturing defect, marketing defects, and breach of warranty claims. However, Nelson is no longer pursuing these claims (Dkt. #27 ¶ 3).

defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**ANALYSIS**

Sunbeam argues the Court should grant summary judge on Nelson's claims because there is no genuine dispute as to any material fact (Dkt. #23 at p. 7). To support its position, Sunbeam argues that, as elaborated in its Motion to Strike (Dkt. #24), Dr. Stan McClellan's ("Dr. McClellan") opinions must be struck, and, therefore, Nelson does not have the requisite evidence to establish her claims (Dkt. #23 at p. 12).[2] Conversely, Nelson argues that there are genuine issues

---

[2] Contrary to Sunbeam's assertions, the Court denied Sunbeam's Motion to Strike and determined that Dr. McClellan's opinions were admissible. *See* (Dkt. #29).

of material fact, and, therefore, the Court should deny Sunbeam's Motion for Summary Judgment (Dkt. #27 ¶ 19). The Court will address each claim in turn.

### I. Strict Liability—Design Defect

"To make out a strict liability cause of action, a party must establish that: (1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer without substantial change in its condition from the time of original sale; and (4) the defective product was the producing cause of the injury to the user." *Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 741 (N.D. Tex. 2016) (quoting *Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984)). "A product may be unreasonably dangerous because of a defect in marketing, design, or manufacturing." *Id.* (citing *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997)). Here, Nelson alleges strict liability based on a design defect.

"To recover for a products liability claim alleging a design defect, a plaintiff must prove (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1040 (5th Cir. 2011); *see also Zoch v. Daimler, A.G.*, 4:17-CV-578, 2018 WL 4610569, at *4 (E.D. Tex. Sept. 25, 2018) (citing *Flock v. Scripto–Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003)). Sunbeam contends the heater was not unreasonably dangerous, there is no admissible evidence of a safer alternative design, and there is no evidence of causation (Dkt. #23 at pp. 12–13). The Court will address whether the heater was unreasonably dangerous and whether there was a safer alternative design together.

### A. Unreasonably Dangerous

"A product is unreasonably dangerous when its risk outweighs its utility." *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 6 (Tex. 2015). A "safer alternative design" means a product design other than the one actually used that in reasonable probability:

> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and
> (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

TEX. CIV. PRAC. & REM. CODE § 82.005(b).

Sunbeam's entire argument regarding whether the heater was unreasonably dangerous can be summarized as follows: Dr. McClellan's opinions should be excluded, and absent his opinions, Nelson has no evidence to indicate that the heater was unreasonably dangerous. *See* (Dkt. #23 at p. 7). Regarding Sunbeam's assertions on a safer alternative design, it argues, "[w]ith Dr. McClellan's opinions excluded, there is no evidence of a safer alternative design, with respect to any part of the subject heater that would have prevented or significantly reduced the risk of Plaintiff's injuries" (Dkt. #23 at p. 13). In accordance with the Court's Order (Dkt. #29), Dr. McClellan's opinions are admissible, and Sunbeam's argument is insufficient. As discussed in the Order, Dr. McClellan did find, test, and provide safer alternative designs, which were economically feasible and would not reduce the utility of the heater (Dkt. #29).

#### i. Safer Alternative Design

"Texas law does not require a manufacturer to destroy the utility of his product in order to make it safe." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995) (internal quotation marks omitted). "A safer alternative design is one that would have prevented or significantly reduced the risk of the injury, would not substantially impair the product's utility, and was

5

economically and technologically feasible at the time." *Genie Indus., Inc.*, 462 S.W.3d at 7. In making the showing that the safer alternative design is feasible, Nelson need not actually build and test it—though Dr. McClellan did in this case—but Nelson is only required to show that the alternative design was "capable of being developed." *See id*. "Importantly, however, the alternative design must not be one that would 'under other circumstances, impose an equal or greater risk of harm.'" *Id.* (quoting *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 337 (Tex. 1998)).

> When evaluating the reasonableness of a design alternative, the overall safety of the product must be considered. It is not sufficient that the alternative design would have reduced or prevented the harm suffered by the plaintiff if it would also have introduced into the product other dangers of equal or greater magnitude.

Restatement (Third) of Torts: Prod. Liab. § 2 cmt. f (1998) (cited in *Uniroyal Goodrich Tire Co.,* 977 S.W.2d at 337).

Nelson provides evidence of a safer alternative design for the Sunbeam Heater. Nelson relies heavily on the testing and reports of Dr. McClellan, an expert in electrical engineering. Dr. McClellan proffers three design changes as safer alternative designs: (1) an enclosed omnidirectional tip switch; (2) a cool-down fan; and (3) a secondary grill. The Court will set out the evidence of each design change below.

### Enclosed Omnidirectional Tip Switch

Dr. McClellan's proposal of an enclosed omnidirectional tip switch design is not a new design but rather one that is already in use by other companies making space heaters. The tip switch mechanism is intended to turn the heater off if it is knocked over (Dkt. #27, Exhibit 2 at p. 33). The type of tip switch in the Sunbeam Heater is known as an open-air, single-plane tip switch (Dkt. #27, Exhibit 2 at p. 29). The housing of the switch is not self-contained, thus exposing the mechanism to the outside air allowing environmental contaminants to interfere with its operation (Dkt. #27, Exhibit 2 at p. 29). Further, Dr. McClellan noted the mechanism does not detect

sideways tips consistently due to the single-plane nature of the switch (Dkt. #27, Exhibit 2 at p. 29). Dr. McClellan identifies these design choices as flaws.

The enclosed, omnidirectional tip switch would solve the issues Dr. McClellan identifies in the current design. The enclosed switch would have shielded the mechanism from environmental contaminants that could affect the function of the switch. Additionally, using an omnidirectional switch would increase the likelihood that the heater would turn off if it was knocked over to the sides and not just in the front and back plane. Nelson presented sufficient evidence to show that an enclosed, omnidirectional tip switch would have been a safer alternative design.

### Cool-Down Fan

Dr. McClellan's cool-down fan proposal would simply incorporate a design feature of other heaters into the Sunbeam Heater. The cool-down heater would continue to run after the unit was powered off either due to an accidental tip or if it were deliberately turned off. The fan would run for approximately sixty seconds following the unit being turned off. The continued airflow across the grill would reduce the temperature of the grill at a more rapid rate than cooling by the ambient temperature alone (Dkt. #27, Exhibit 2 at p. 74). Nelson has presented sufficient evidence to show that the addition of a cool-down fan would be a safer alternative design.

### Secondary Grill

Dr. McClellan proposed adding a secondary grill to the heater. Such design is not novel and is incorporated in other models on the market. The secondary grill would prevent consumers from contacting the hot, primary grill. Dr. McClellan made a secondary grill and tested the temperatures of the secondary grill with it located at varied distances from the primary grill.

7

The secondary grill provides a safer alternative design, and there is no indication that the secondary grill would diminish the utility of the heater.

In tandem with his testing and analysis of a safer alternative design, Dr. McClellan discussed the risk the heater presented to consumers. Dr. McClellan noted the extreme temperatures the grill of the heater could reach (Dkt. #27, Exhibit 2 pp. 39–43). He also provided multiple alternative designs that could have eliminated or greatly reduced the risk of Nelson's injuries without substantially impairing the product's utility (Dkt. #27, Exhibit 2 at pp. 71–74). The design changes Dr. McClellan offered can be found in other units on the market, and he was able to acquire or construct the alternative designs and incorporate them into the Sunbeam Heater. His testing shows that implementing the designs into the Sunbeam Heater is economically feasible without diminishing the utility of the heater.

Sunbeam does not make any substantive argument outside claiming there is no evidence supporting whether the heater was unreasonably dangerous or whether there was a safer alternative design without Dr. McClellan's opinions. Because Sunbeam did not brief an alternative argument of "even if Dr. McClellan's opinions are admissible, there is still no evidence because . . . ," the Court will not rehash the discussion found in its Order (Dkt. #29). Dr. McClellan's report is replete with information regarding the dangerous design and safer alternatives of the heater. His report will provide fodder for discussion on cross examination if Sunbeam so desires.

In summary, Nelson has shown that at the very least there is a genuine dispute of material fact regarding whether the heater was unreasonably dangerous and whether there is a safer alternative design.

### B. Causation

"Texas courts define producing cause as one that is 'a substantial factor in bringing about an injury, and without which the injury would not have occurred.'" *Goodner*, 650 F.3d at 1044 (citing *Ford Motor Co. v. Ledesma,* 242 S.W.3d 32, 46 (Tex. 2007)). Sunbeam claims there is no evidence of causation (Dkt. #23 at p. 13). Specifically, Sunbeam again says "[w]ith Dr. McClellan's opinions excluded, there is no evidence to show causation" (Dkt. #23 at p. 14). To satisfy the third element of her design defect claim, Nelson must show that there is a fact question surrounding whether the alleged defect was a "producing cause" of her injury. She has done so.

There is a fact question about whether the single grill and non-omni-directional tip switch was a producing cause of her burns. The purpose of the tip switch was to turn the heater off it was knocked over, and the purpose of the grill was to prevent consumers from contacting the heating element directly and suffering burns. As discussed above and in the Court's Order (Dkt. #29 at p. 8), Nelson suffered the type of injury these safety precautions were meant to prevent.

Further, expert testimony from Dr. McClellan is not necessarily required to prove causation, and Nelson's own testimony can support causation. "Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Kallassy v. Cirrus Design Corp.*, No. Civ. A. 3:04-CV-0727N, 2006 WL 1489248, at *5 (N.D. Tex. May 30, 2006) (quoting *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984)).

The basic simplicity of Nelson's injuries means that expert testimony is not required to show causation. Jurors, based on their common understanding and experience, could understand the causation theory in this case without the aid of expert testimony. Nelson, through experts and

9

her own testimony, has produced sufficient evidence for each element of her design defect claim. Consequently, the Court denies Sunbeam's Motion for Summary Judgment on the design defect claim.

## II. Negligence

To establish a claim for negligence under Texas law, the plaintiff "must establish a duty, a breach of that duty, and damages proximately caused by the breach." *Eckhardt v. Qualitest Pharm., Inc.*, 751 F.3d 674, 681 (5th Cir. 2014) (citing *Kroger Co. v. Elwood,* 197 S.W.3d 793, 794 (Tex. 2006)). "[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018) (quoting *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)); *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017).

"Normally, strict products liability and negligence are separate causes of action with different elements." *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 857 (Tex. App.—Dallas 2007, pet. denied). The Texas Supreme Court has explained:

> The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production.

*Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871-72 (Tex. 1978).

Sunbeam argues that because Nelson's negligence claims are subsumed into the products liability claims, and because the products liability claims should fail, so too should the negligence claims fail. *See* (Dkt. #23 at p. 21). In the Complaint, Nelson alleges Sunbeam was negligent in its design of the heater, how it manufactured the heater, how it marketed the heater, as well as negligence regarding a failure to warn, and failing to recall the heater (Dkt. #1 ¶ 21).

However, Nelson focuses her response exclusively on the negligent design of the heater, and the Court will focus its analysis accordingly.[3]

"When a plaintiff's allegations and evidence are directed to whether a product is defective and no other potentially negligent conduct is alleged, the duty and breach analysis is subsumed into an inquiry of whether a product is 'unreasonably dangerous.'" *Anthony v. Sunbeam Products, Inc.*, 1:18-CV-607, 2020 WL 4677429, at *3 (E.D. Tex. May 5, 2020) (citing *Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 256 (5th Cir. 1988); *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App.—Dallas 2004, pet. denied)).

The Court has already determined there is a fact issue regarding whether the heater was unreasonably dangerous. Further, the Court has also already found a fact question regarding whether the defect in the heater caused the harm Nelson suffered. Accordingly, Nelson has demonstrated the existence of a genuine dispute of material fact, and summary judgment on her negligence claim is not warranted.

---

[3] Nelson stated in her Response that she was no longer pursuing her claims for manufacturing defect, marketing defects, and breach of warranty (Dkt. #27 ¶ 3). In her complaint, Nelson brought claims stating Sunbeam was negligent in its design of the heater, how it manufactured the heater, how it marketed the heater, as well as negligence regarding a failure to warn, and failing to recall the heater (Dkt. #1 ¶ 21). However, in her response, Nelson makes no mention to any negligence in the manufacturing or marketing of the heater, nor does she make any mention of negligence regarding a failure to warn or failure to recall. The Court presumes that Nelson is no longer pursuing these specific negligence claims as evidenced by the fact that in her statement of the issues in her response, she makes no mention of these specific negligence claims either. *See* (Dkt. #27 ¶ 2).

## CONCLUSION

It is therefore **ORDERED** that Sunbeam's Motion (Dkt. #23) is hereby **GRANTED in part** as to the claims for strict liability—manufacturing defect; strict liability—marketing defect; and breach of warranty claims. The Motion is hereby **DENIED** as to all other claims.

**IT IS SO ORDERED.**
**SIGNED** this 27th day of April, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE